CC-97-748                                                            1

En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| Ivonne Figueroa Hernández<br>      Peticionaria<br><br>      V.<br><br>Rubén del Rosario Cervoni<br>      Recurrido | Certiorari<br><br>98TSPR158 |

Número del Caso: CC-97-0784

Abogados de Ivonne Figueroa Hernández:

Lcdo. Moises Abreu Cordero
Lcda. Margarita Carillo Iturrino

Abogados de Rubén del Rosario Cervoni:

Lcdo. José Davison Lampón
Lcdo. Francisco J. Hernández Rentas
Lcda. Ana López Prieto
Lcda. Silvia del Rosario Sanfeliu

Tribunal de Instancia: Superior de Carolina

Juez del Tribunal de Primera Instancia: Hon. María del Carmen Gómez

Tribunal de Circuito de Apelaciones: Circuito Regional I

Panel Integrado por los Hons.:      Fiol Matta
                                     Rodríguez de Oronoz
                                     Gilberto Gierbolini

Fecha: 11/23/1998

Materia: Divorcio y Custodia

    Este documento constituye un documento oficial del Tribunal
    Supremo que está sujeto a los cambios y correciones del
    proceso de compilación y publicación oficial de las
    decisiones del Tribunal. Su distribución electrónica se hace
    como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Ivonne Figueroa Hernández

   Peticionaria-Recurrente

            v.

Rubén Del Rosario Cervoni          CC-97-784       Certiorari

   Demandado-Recurrido



Opinión del Tribunal emitida por la Juez Asociada señora NAVEIRA DE RODON.



                    San Juan, Puerto Rico, a

                              **I**


     El Sr. Rubén Del Rosario Cervoni, aquí recurrido, y la Sra. Ivonne Figueroa Hernández, peticionaria, se divorciaron el 19 de mayo de 1994. Según estipulado por las partes, la custodia del hijo de ambos, el menor Rubén Del Rosario Figueroa, se adjudicó a la señora Figueroa Hernández.

     En enero de 1996, el señor Del Rosario Cervoni solicitó la custodia del menor. Alegó que se justificaba el cambio debido a que la señora Figueroa Hernández impedía las relaciones                                            paterno

filiales. El 1ro de julio de 1997, tras la celebración de una vista, el tribunal de instancia emitió una resolución, archivada en autos el 3 de julio de 1997, mediante la cual denegó el cambio solicitado.

El 14 de julio de 1997, el señor Del Rosario Cervoni presentó ante el foro de instancia una moción en la que solicitó determinaciones de hechos y conclusiones de derecho adicionales. El 30 de julio de 1997, el tribunal la denegó mediante resolución archivada en autos el 4 de agosto de 1997.

El 3 de septiembre de 1997, dos (2) meses depués del archivo en autos de la resolución denegando el cambio de custodia, el señor Del Rosario Cervoni apeló ante el Tribunal de Circuito de Apelaciones, Circuito Regional de San Juan (en adelante, Tribunal de Circuito). El 12 de septiembre de 1997, dicho Tribunal emitió una resolución acogiendo la apelación como un certiorari por considerar que éste era el recurso apropiado.

El 19 de septiembre de 1997, la señora Figueroa Hernández solicitó la desestimación del recurso por el fundamento de falta de jurisdicción. Alegó que éste se había presentado fuera del término provisto por ley. Indicó que el dictamen emitido por el foro de instancia el 1ro de julio de 1997 era una resolución, por ende, el señor Del Rosario Cervoni no podía solicitarle al tribunal, al amparo de la Regla 43.3 de Procedimiento Civil, según enmendada, 32 L.P.R.A. Ap. III, que realizara determinaciones adicionales de hechos. En consecuencia, dicha solicitud no interrumpió el término provisto por ley para recurrir en alzada.

El 20 de noviembre de 1997, el Tribunal de Circuito dictó una resolución denegando la desestimación. Inconforme, la señora Figueroa Hernández acudió ante nos, le imputó a dicho Tribunal haber incurrido en los siguientes errores:

PRIMER ERROR
Cometió error el Tribunal de Circuito al denegar la desestimación del recurso de certiorari instado por el demandante recurrido, a pesar de que el mismo fue presentado tardíamente.

SEGUNDO ERROR

Incidió el Tribunal de Circuito al resolver que una resolución dictada por el Tribunal de Primera Instancia es susceptible de que se soliciten determinaciones adicionales de hechos y conclusiones de derecho y que ello produce el efecto interruptor para fines del término para la revisión de dicha resolución.

II

Por estar íntimamente relacionados, discutiremos los señalamientos de error conjuntamente. El Tribunal de Circuito resolvió que la resolución dictada por el foro de instancia no era meramente interlocutoria ya que ésta adjudicó la controversia entre las partes respecto a la custodia permanente del menor Rubén Del Rosario Figueroa. Razonó, por lo tanto, que cualquiera de las partes podía solicitarle al tribunal sentenciador que realizara determinaciones de hechos y conclusiones de derecho adicionales, con el efecto interruptor del término para recurrir en certiorari al Tribunal de Circuito.

La Regla 43.3 dispone lo siguiente en su parte pertinente:

> No será necesario solicitar que se consignen determinaciones de hechos a los efectos de una <u>apelación</u>, pero a moción de parte, presentada a más tardar diez (10) días después de haberse archivado en autos copia de la notificación de <u>la sentencia</u>, el tribunal podrá hacer las determinaciones de hechos y conclusiones de derecho iniciales correspondientes, si es que éstas no se hubieren hecho por ser innecesarias, de acuerdo a la Regla 43.2, o podrá enmendar o hacer determinaciones adicionales, y podrá enmendar <u>la sentencia</u> de conformidad. La moción se podrá acumular con una moción de reconsideración o de nuevo juicio de acuerdo con las Reglas 47 y 48 respectivamente. (Enfasis suplido.)

A tenor con la Regla 43.4, una solicitud de determinaciones de hechos y conclusiones de derecho adicionales presentada en tiempo y de acuerdo a la Regla 43.3 tiene el efecto de interrumpir los términos dispuestos por ley para solicitar reconsideración (Regla 47), nuevo juicio (Regla 48) y para presentar un recurso de apelación (Regla 53.1). <u>Andino</u> v. <u>Topeka, Inc.</u>, Op. de 10 de abril de 1997, 142 D.P.R. ___ (1997); 97 J.T.S. 46, pág. 876.

Ahora bien, la Regla 43.3 dispone, con meridiana claridad, que para que una moción de determinaciones de hechos y conclusiones de

derecho tenga el efecto de interrumpir los términos previamente mencionados, es preciso que exista una sentencia de la cual se pueda presentar un recurso de apelación. En otras palabras, una moción presentada al amparo de la Regla 43.3 no interrumpe el término provisto para solicitar la revisión de resoluciones.

La Regla 43.1 y nuestra jurisprudencia definen el término sentencia como cualquier determinación del tribunal que resuelva finalmente la cuestión litigiosa, o sea, que adjudique una reclamación entre las partes, y de la cual pueda apelarse[1]. Banco Santander v. Fajardo Farms Corp., Op. de 28 de junio de 1996, 141 D.P.R.__ (1996); 96 J.T.S. 100; Cárdenas Maxán v. Rodríguez, 119 D.P.R. 642, 651 (1987). Una resolución, por su parte, es un dictamen mediante el cual se resuelve un incidente o controversia dentro de un proceso judicial, sin adjudicar definitivamente la totalidad de una reclamación entre las partes.

Además, en reiteradas ocasiones hemos resuelto que cuando el tribunal emite una resolución, pero ésta verdaderamente pone fin a una reclamación entre las partes, la referida resolución constituye una sentencia, final o parcial, de la cual puede interponerse un recurso de apelación. Banco Santander v. Fajardo Farms Corp., supra, pág. 1355; A.F.F. v. Tribunal, 93 D.P.R. 903 (1967). Después de todo, es el contenido de un escrito, no el título que se le dé, el que determina su naturaleza. Véanse, Magriz v. Empresas Nativas, P.C. de 12 de mayo de 1997, 143 D.P.R. __ (1997), 97 J.T.S. 55, pág. 945; Ramos González v. Félix Medina, 121 D.P.R. 312, 331 (1988).

Ahora bien, se puede apelar de una sentencia parcial si se trata de un caso con partes o reclamaciones múltiples y el tribunal concluye expresamente que no existe razón para posponer dictar sentencia en cuanto a una o más de tales reclamaciones o partes hasta la resolución final del pleito, y ordena expresamente que se registre la misma. En

consecuencia, la sentencia parcial emitida será final y, una vez se registre y archive en autos copia de la notificación, comenzará a decursar el término para presentar un recurso de apelación. Véanse, Regla 43.5 de Procedimiento Civil; Torres Cepeda v. Rivera Alejandro, Op. de 30 de mayo de 1997, 143 D.P.R. __ (1997), 97 J.T.S. 77; Dumont v. Inmobiliaria Estado. Inc., 113 D.P.R. 406 (1982); Asociación de Propietarios v. Santa Bárbara Co., 112 D.P.R. 33 (1982).

Por otro lado, para solicitar la revisión de una resolución u orden interlocutoria, una parte puede recurrir al Tribunal de Circuito, mediante recurso de certiorari. Este debe presentarse dentro del término de cumplimiento estricto de treinta (30) días contados a partir del archivo en autos de copia de la notificación de la resolución u orden. Esto significa que su observancia tardía es permisible sólo de existir y demostrarse a cabalidad una justa causa para no cumplir rigurosamente con el término en cuestión. Arriaga v. Fondo del Seguro del Estado, Op. de 18 de marzo de 1998, __ D.P.R. __ (1998), 98 J.T.S. 28. En otras palabras, bajo estas circunstancias, el tribunal apelativo tiene discreción para prorrogar el término y acoger el recurso de certiorari para su consideración. Art. 4.002(f) de la Ley de la Judicatura de 1994, según enmendada por la Ley Núm. 248 del 25 de diciembre de 1995, 4 L.P.R.A. sec. 22 y ss[2]; Banco Popular de P.R. v.

---

[1] La Ley de la Judicatura de 1994, según enmendada por la Ley Núm. 248 de 25 de diciembre de 1995, eliminó el recurso de revisión para recurrir de sentencias finales dictadas por el Tribunal de Primera Instancia.

[2] Dicho artículo dispone, en lo pertinente, lo siguiente:
El Tribunal de Circuito de Apelaciones conocerá en los siguientes asuntos:

   f) Mediante auto de Certiorari expedido a su discreción, de cualquier otra resolución u orden dictada por el Tribunal de Primera Instancia, incluyendo el Tribunal de Distrito durante el proceso de su abolición. En estos casos, el recurso de Certiorari se formalizará presentando una solicitud dentro de los treinta (30) días siguientes a la fecha de notificación de la resolución u orden. El término aquí dispuesto es de cumplimiento estricto, excepto cuando mediaren circunstancias especiales debidamente sustentadas en la petición de Certiorari. La presentación de una moción de reconsideración producirá en cuanto al término para solicitar un Certiorari bajo este inciso en casos

<u>Municipio de Aguadilla</u>, Op. de 29 de diciembre de 1997, 144 D.P.R. ___ (1997); 97 J.T.S. 152.

En conclusión, a tenor con lo dispuesto en la Regla 43.3, la presentación de una moción solicitando determinaciones de hechos adicionales no tiene el efecto de interrumpir el término de treinta (30) días, de cumplimiento estricto, que tienen las partes para solicitar la revisión de determinaciones interlocutorias[3].

### III

Los casos de familia están permeados del más alto interés público y tienen, además, un carácter sui generis. En virtud de lo anterior, hemos expresado que las determinaciones de alimentos y de custodia de menores no constituyen propiamente cosa juzgada ya que están sujetas a revisión judicial, en el tribunal de instancia, si ocurre un cambio en las circunstancias que así lo justifique, siempre, claro está, tomando en consideración los mejores intereses y el bienestar de los menores. <u>Santana Medrano</u> v. <u>Acevedo Osorio</u>, 116 D.P.R. 298 (1985); <u>Centeno Alicea</u> v. <u>Ortiz</u>, 105 D.P.R. 523 (1977). En consecuencia, estos dictámenes nunca son estrictamente finales ni definitivos. Las modificaciones a las determinaciones sobre custodia y alimentos basadas en hechos y circunstancias ocurridos con posterioridad a haberse emitido el dictamen que se intenta modificar, pueden reclamarse en el mismo caso o en uno independiente. Sin embargo, a pesar de que se tiene esta alternativa, en la mayoría de los casos, no es recomendable que estas modificaciones se soliciten en un pleito independiente. La economía procesal así lo sugiere.

La determinación que emita el foro de instancia resolviendo una solicitud de modificación de un decreto de custodia o alimentos, por cambios en las circunstancias, adjudica una reclamación entre las

---

civiles únicamente, el mismo efecto provisto por las Reglas de Procedimiento Civil para los recursos de apelación.

[3] A tenor con lo dispuesto en la Regla 53.1 (i), el término para presentar ante el Tribunal de Circuito una solicitud de certiorari se interrumpirá y comenzará a contarse de nuevo de conformidad con lo dispuesto en la Regla 47.

partes, de acuerdo con los hechos y circunstancias existentes <u>en el momento</u> en que se dilucida y resuelve la misma y, por ende, constituye una nueva sentencia de la cual puede apelarse.

Recapitulando, los dictámenes de custodia y de alimentos no constituyen cosa juzgada ya que pueden ser modificados de ocurrir un cambio en los hechos y circunstancias que así lo justifique. Sin embargo, éstos tampoco son estrictamente interlocutorios ya que **adjudican y resuelven una reclamación entre las partes**. En virtud de lo anterior y tomando en consideración la naturaleza sui generis de los pleitos de familia, resolvemos que los dictámenes de alimentos y de custodia que modifican o intentan modificar los dictámenes finales previos, por haber ocurrido un cambio en las circunstancias, constituyen propiamente <u>sentencias</u>. En consecuencia, una moción de determinaciones de hechos y conclusiones de derecho adicionales oportunamente presentada al amparo de la Regla 43.1, interrumpe el término jurisdiccional de treinta (30) días para recurrir en alzada al Tribunal de Circuito.

## IV

En el caso de autos, el tribunal de instancia adjudicó <u>la única reclamación</u> existente entre las partes: la solicitud de cambio de custodia del menor por un alegado cambio en las circunstancias. Resulta forzoso concluir, por lo tanto, que el dictamen emitido por el foro de instancia, aunque erróneamente titulado resolución, fue una sentencia.

En la extensa y bien detallada sentencia, el tribunal de instancia expresó que evaluó toda la prueba pericial presentada y dirimió la credibilidad a tenor con la doctrina de que el juzgador de los hechos no está obligado a aceptar las conclusiones de un perito. <u>Pueblo</u> v. <u>Montes Vega</u>, 118 D.P.R. 164 (1986). El tribunal también analizó, por separado, los factores que tomó en cuenta al adjudicar la custodia, factores tales como la preferencia del menor, su salud física y mental, la interrelación del menor con su familia y la salud psíquica de las

partes. Discutió, además, los testimonios de los peritos, cuáles le merecieron entero crédito y las pruebas administradas a las partes. Con relación a esta bien fundamentada sentencia, el reclamante podía solicitar determinaciones de hechos adicionales al amparo de la Regla 43.3.

Oportunamente, el señor Del Rosario Cervoni solicitó al foro de instancia que hiciese ciento once (111) determinaciones de hechos adicionales, las cuales, en su inmensa mayoría, estaban relacionadas con la prueba pericial presentada, el valor probatorio que el tribunal de instancia concedió a ésta, los exámenes realizados al menor y las cualificaciones de la perito presentada por el señor Del Rosario Cervoni.

La presentación de la referida moción tuvo el efecto de interrumpir el término jurisdiccional de treinta (30) días para recurrir en alzada, en apelación, a tenor con lo dispuesto en el Art. 4.002 (a) de la Ley de la Judicatura, supra.

Por los fundamentos antes expuestos, se confirma la resolución emitida por el Tribunal de Circuito de Apelaciones, Región Judicial de San Juan y se devuelve el caso a dicho foro para que continúen los procedimientos.

Se dictará sentencia de conformidad.

Miriam Naveira de Rodón
Juez Asociada

CC-97-784

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ivonne Figueroa Hernández

    Peticionaria

       v.                     CC-97-784

Rubén Del Rosario Cervoni

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 23 de noviembre de 1998

Por los fundamentos antes expuestos, se confirma la resolución emitida por el Tribunal de Circuito de Apelaciones, Región Judicial de San Juan y se devuelve el caso a dicho foro para que continúen los procedimientos.

Lo pronunció, manda el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Negrón García emitió una opinión disidente a la cual se une el Juez Asociado señor Hernández Denton. El Juez Asociado señor Rebollo López no interviene.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

CC-97-784

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Ivonne Figueroa Hernández

   Peticionaria-Recurrente


       v.                  CC-97-784    Certiorari


Rubén Del Rosario Cervoni

   Demandado-Recurrido


Opinión Disidente del Juez Asociado señor Negrón García a la cual se une el Juez Asociado señor Hernández Denton


San Juan, Puerto Rico, a 23 de noviembre de 1998

**Deferencialmente, razones de naturaleza constitucional, jurídicas y procesales, nos impiden suscribir la Opinión mayoritaria.**

Incidió el reputado Tribunal de Circuito de Apelaciones (Hons. Fiol Matta, Rodríguez de Oronoz y Gierbolini), **al asumir jurisdicción bajo la tesis errónea de que estaba ante una apelación, no un _certiorari_.**

I

**El derecho de apelación penal o civil es de origen estatutario, _no judicial_.** Pueblo v. Esquilín, res. en 20 de octubre de 1998; Concepción

v. Junta de Contabilidad, 80 D.P.R. 194 (1958); Vázquez v. Rivera, 69 D.P.R. 947 (1949). **No existe en defecto de que la Asamblea Legislativa mediante estatuto expresamente lo conceda.** Ex Parte Del Valle, Sánchez, etc. v. Opositores, 69 D.P.R. 663 (1949); Sampedro v. Fournier, 69 D.P.R. 584 (1949); Banuchi v. Corte, 64 D.P.R. 112 (1944); Quilinchini v. Com. Serv. Civil, 63 D.P.R. 681 (1944); Ortiz v. Corte de Paz, 53 D.P.R. 38 (1938). Jamás nuestro ordenamiento legal ha permitido revisar incidentes post-sentencias vía derecho de apelación; siempre el vehículo procesal ha sido certiorari. **Al presente, la Ley Orgánica de la Judicatura, enmendada por la Núm. 248 de 25 de diciembre de 1995, sólo reconoce el derecho de apelación contra sentencias finales dictadas en casos penales y civiles.** Art. 4.002(a). **En su diseño, el Legislador excluyó cualesquiera otros asuntos y dictámenes, para los cuales dispuso el certiorari.**

**Este Tribunal carece de facultad constitucional para, por fiat judicial, abrogarse y usurpar una prerrogativa fundamental que pertenece a la Asamblea Legislativa. La cuestión hiere las entrañas mismas del delicado balance de poderes constitucionales.** Un tribunal apelativo no adquiere jurisdicción a menos que el recurso de apelación interpuesto este autorizado por ley. S. Rosemblum Inc. v. Hernández, Admor. Jud., 44 D.P.R. 790 (1933).

II

Toda controversia judicial sobre el ente familiar –incluso relaciones materno-paterno filiales, custodia, alimentos, etc.-, goza en los tribunales de alta prioridad y atención en los trámites de las distintas etapas del proceso. Se trata también de un asunto de máxima política pública que siempre ha preocupado al Legislador.

No importa lo compleja que sea una controversia **post-sentencia** sobre custodia (o alimentos), e independiente-mente de que esté revestida de interés público y no constituya cosa juzgada –sui generis, al decir mayoritario- ello no es suficiente para **ultra vires** convertir su **resolución** en **sentencia** y, por ende, imponer **apelaciones obligatorias.**

Diariamente en los tribunales se dilucidan incidentes post-sentencias sobre variados asuntos de importancia, que técnicamente constituyen nuevas controversias a las inicialmente adjudicadas en el pleito principal. Estos incidentes separados, una vez resueltos mediante dictámenes explicados, aunque también disponen finalmente la cuestión particular entre las partes, **no dejan de ser resoluciones**. Lo único que propiamente los diferencia de los decretos de alimentos y custodia, es que gozan de la característica de **cosa juzgada**. Y en éste último aspecto, la Asamblea Legislativa en el Art. 19 de la <u>Ley Especial de Sustento de Menores</u> (8 L.P.R.A., sec. 518), imprimió a las órdenes de pensión alimentaria, como regla general atributo de **cosa juzgada <u>temporal</u>**, a saber, salvo cambios significativos e imprevistos son intocables durante tres (3) años.

**La conjugación de los criterios expuestos a los fines de establecer o no el derecho de apelación, pertenece a la Asamblea Legislativa, no a este foro.**

### III

Con todo respeto, el análisis mayoritario que **transforma resoluciones en sentencias**, es el típico <u>non sequitur</u> seguido en <u>Banco Santander de P.R.</u> v. <u>Fajardo Farms Corp.</u>, res. en 28 de junio de 1996. Allí una resolución que denegó el relevo de una sentencia final y firme de tres (3) años bajo la Regla 49.2 de Procedimiento Civil, fue convertida en sentencia, simplemente porque se celebró una vista evidenciaria y el tribunal de instancia consignó su carencia de méritos con fundamentos fácticos y jurídicos. En nuestro disentir, analizamos la confusión de equiparar esa vista con la que corresponde en su fondo en el pleito principal o uno independiente, y hacer sentencias de resoluciones por éstas ser complejas y explicadas.

**Hoy se repite el mismo error.** La mayoría parte de la premisa de que se adjudicó entre partes una compleja controversia de custodia distinta, "y, por ende, constituye una nueva sentencia de la cual puede apelarse." (Opinión, pág. 8). Llega a esa conclusión, aun cuando acepta que el

asunto puede plantearse en un pleito independiente, pero que "en la mayoría de los casos, no es recomendable... [pues] la economía procesal así lo requiere." (Id.).

**Contrario a esa conclusión, la metamorfosis de resoluciones a sentencias, no se traduce en economía procesal. Implica una pesada carga para los Tribunales de Primera Instancia.** A sus jueces les impone el deber de **siempre** hacer determinaciones de hecho y conclusiones de derecho típicas de una Sentencia en cualquier incidente de alimentos o custodia irrespectivo de su sencillez o frivolidad. **Peor aún, los obliga a evaluar toda solicitud de determinaciones de hecho o conclusiones de derecho adicionales —con la consabida interrupción del término jurisdiccional para revisar–; moción no disponible para las resoluciones, complicando así el quehacer judicial y demorando la pronta solución a la cual aspiramos todos.** A nivel de secretaría, genera trámites más costosos, formales y minuciosos: no es lo mismo notificar una resolución que realizar las formalidades relativas al archivo en autos de copia de notificación de una sentencia.[4] Igual impacto procesal y encarecimiento de costos representa para litigantes y abogados.

---

[4] Al presente, salvo aquellos Tribunales Superiores que tienen en operación el sistema mecanizado, muchas Resoluciones son usualmente notificadas del siguiente modo tradicional: se fotocopia directamente del expediente (autos) la hoja doblada que contiene la orden del Juez en manuscrito —cuidando que aparezca el epígrafe del caso y el título de la moción–, y seguidamente se le imprime al dorso un sello de goma de notificación que es cumplimentado también a manuscrito, con la fecha de la notificación a los abogados, todo bajo la firma del Secretario o Subsecretario.

En contraste, con el sistema mecanizado, la orden es mecanografiada directamente por la funcionaria en la computadora y ésta imprime en el formulario OAT-750 la notificación necesaria, la cual incluye la dirección de los abogados en récord; este documento entonces se inserta en un sobre con ventanilla y así es depositado en el correo. El trámite de sentencia es igual, pero requiere el formulario especial OAT-704, disponible solamente en este sistema mecanizado. **Una de las ventajas del sistema mecanizado es que ha permitido prescindir del Libro de Radicaciones y del Libro de Registro de Sentencias.**

El rápido proceso de abolición del Tribunal de Distrito para convertirlo en un solo Tribunal de Primera Instancia, visualizado en la Ley de la Judicatura, no ha permitido llevar el sistema mecanizado a los antiguos Tribunales de Distrito que ahora **funcionan como Tribunal Superior.** En éstos, el proceso de notificación de resoluciones y

IV

**Si variamos el proceso expedito de revisión judicial vía <u>certiorari</u> que el Legislador escogió y lo convertimos en apelación, además de usurpar una facultad constitucional exclusiva de la Asamblea Legislativa, seremos responsables del sobrecargo explosivo a que estaríamos empujando al Tribunal de Circuito de Apelaciones, sobre cuyos hombros depositaríamos la pesada carga procesal que significa tal cambio.**

La nueva norma mayoritaria aumentará sustancialmente la presentación de apelaciones ante ese Tribunal, generando trámites, gastos y atrasos innecesarios. La experiencia revela que el establecimiento del derecho de apelar propicia un incremento en su número y afecta los limitados recursos de personal judicial y secretarial disponibles, en perjuicio de las apelaciones civiles y penales reconocidas en la susodicha Ley de la Judicatura.

**Significa el establecimiento judicial de numerosas**

sentencias se rige todavía por el sistema tradicional primeramente descrito.

**apelaciones inmeritorias que sobrecargarán el abultado calendario que tiene el Tribunal de Circuito en detrimento de las labores de sus Jueces.**

Sabido es que las apelaciones como cuestión de derecho, tienen el defecto de obligar a los tribunales apelativos a entender en innumerables recursos frívolos. Pueblo v. Rosario, 80 D.P.R. 318, 326-328 (1958). Aún siendo inmeritorios, su perfeccionamiento requiere del Tribunal de Circuito -muchas veces también la intervención de los Tribunales de Primera Instancia-, unos trámites peculiares que toman más tiempo. Tienen que ser evaluadas con una Exposición Narrativa de la Prueba, alegatos y resueltas por Sentencias.

No es lo mismo cuando se trata del certiorari. **Éstos, por ser discrecionales, tienen la virtud de viabilizar una justa y pronta adjudicación.** Distinto a las apelaciones, los jueces tienen disponible el mecanismo de orden para mostrar causa, de comprobada utilidad y eficacia. Si carecen de méritos, pueden ser resueltos por el Tribunal de Circuito mediante simples y breves Resoluciones explicativas de su negativa a intervenir, **sin ulterior trámite.** Esas negativas a expedir, -**intrínsecamente de igual valor dispositivo-adjudicativo que las nuestras**-, si bien para las partes perdidosas y sus abogados pueden ser injustas y enojosas, para los litigantes contrarios y sus representantes legales es el punto final justo, rápido y económico de todo un largo proceso.

**Si algún asunto amerita una rápida, final y firme adjudicación son las controversias sobre alimentos y custodia, que se caracterizan por la nota de imperiosa necesidad. Ello explica por qué el Legislador nunca ha optado por reconocerles el derecho de apelación en incidentes post-sentencia y si el certiorari.**

## V

**Todo juez y abogado de experiencia sabe -al extremo de que es materia susceptible de conocimiento judicial-, que la mayoría de sentencias de divorcio que se dictan en los tribunales de instancia, con el correr de los años generan muchísimos incidentes de alimentos y custodia para hijos menores.**

Por eso es común, en el recinto del Tribunal de Primera Instancia, la frase o comentario al efecto de que en las Salas de Relaciones de Familia, el trabajo comienza después de la sentencia de divorcio. **Ello obedece a que luego de tal etapa cada expediente habrá de producir numerosas resoluciones, durante el mucho tiempo que la prole –compuesta de niños de corta edad, adolescentes, incluso mayores de edad que sean estudiantes <u>bona fide</u> hasta los veinticinco (25) años–, no se emancipe.**

**No obstante la importancia de estos asuntos, muchos no suelen ser tan complejos como para justificar el trámite de apelación más formal, estructurado y, por ende, lento.** Por ésta y otras razones, la Asamblea Legislativa ha mantenido el mismo esquema de revisión a través del <u>certiorari</u>, aun cuando ha tratado de estabilizar y darle cierta permanencia a los dictámenes a nivel de instancia. A tal efecto, según indicamos antes, la <u>Ley Especial de Sustento de Menores</u>, dispuso que toda orden de pensión alimentaria sólo pueda revisarse transcurridos tres (3) años de fijada o modificada, excepto si hay cambios significativos o imprevistos de las partes o si al adoptarse se desconocía información pertinente que no fuera por culpa de la parte perjudicada.

**Aún con la restricción que hemos llamado cosa juzgada temporal, el volumen es inmenso. Las tristes estadísticas de Divorcios concedidos en que hay hijos menores –limitados a los últimos cinco (5) años–, nos da una idea del potencial explosivo de estas nuevas apelaciones obligatorias.**

| CAUSAL | 1993-94 | 1994-95 | 1995-96 | 1996-97 | 1997-98* | |
|---|---|---|---|---|---|---|
| Abandono por más de un año | 112 | 122 | 94 | 100 | 109 | |
| Adulterio | 70 | 85 | 66 | 50 | 69 | |
| Consentimiento mutuo | 4850 | 4693 | 3597 | 4021 | 3906 | |
| Convicción de delito grave | 13 | 7 | 6 | 14 | 24 | |
| Embriaguez habitual | 5 | 5 | 3 | – | 1 | |
| Exequatur | 2 | 5 | 1 | 5 | 6 | |
| Separación por más de dos años | 2055 | 2091 | 1898 | 1830 | 2103 | |
| Trato cruel e injurias graves | 1782 | 1713 | 1581 | 1435 | 1646 | |
| Uso continuo de narcóticos | 4 | 2 | 4 | 1 | 4 | |
| Otras** | – | 1 | – | 2 | 1 | |

| Sub-Total | 8893 | 8724 | 7250 | 7458 | 7869 | Total 40,194 |
|---|---|---|---|---|---|---|

*Datos preliminares
**Incluye: caso de competencia, citación de testigo e  impotencia absoluta.

Fuente: OAT, Oficina de Estadísticas

Además, a modo de **complemento**, la siguiente tabla nos revela el número preciso de hijos menores envueltos durante ese mismo período.

| CAUSAL | 1993-94 | 1994-95 | 1995-96 | 1996-97 | 1997-98 | |
|---|---|---|---|---|---|---|
| Abandono por más de un año | 225 | 222 | 170 | 177 | 189 | |
| Adulterio | 128 | 174 | 131 | 103 | 139 | |
| Caso de competencia | – | – | – | 4 | 1 | |
| Consentimiento mutuo | 8721 | 8368 | 6269 | 7126 | 6785 | |
| Convicción de delito grave | 22 | 13 | 13 | 32 | 42 | |
| Corrupción de menores | – | – | – | – | | |
| Embriaguez habitual | 12 | 10 | 8 | – | 2 | |
| Exequatur | 3 | 9 | 1 | 7 | 10 | |
| Impotencia absoluta | – | – | – | 2 | | |
| Locura incurable | – | – | – | – | | |
| Separación por más de dos años | 4014 | 3968 | 3738 | 3497 | 3968 | |
| Trato cruel e injurias graves | 3590 | 3419 | 3086 | 2836 | 3215 | |
| Uso continuo de narcóticos | 10 | 4 | 6 | 1 | 9 | Total |
| Total | 16725 | 16187 | 13422 | 13785 | 14360 | 74,479 |

Fuente: OAT, Oficina de Estadísticas

**Lo anterior es una muestra parcial del universo de casos previos de divorcio e hijos menores envueltos. No toma en cuenta más de cien mil (100,000) divorcios concedidos en la década de los ochenta y los primeros años de la actual. No obstante, la sola activación de una fracción pequeña de esos casos y, la proyección de su efecto multiplicador en virtud de la norma mayoritaria, permite razonablemente predecir un aumento dramático en las apelaciones, de proporciones catastróficas.**

El compromiso del sistema judicial es frente a la decena de miles de progenitores y niños que anualmente piden y son merecedores de pronta y eficaz atención. Si complicamos innecesariamente la revisión de los dictámenes de alimentos y custodias ante el Tribunal de Circuito con apelaciones obligatorias, el limitado recurso se agotará; **en efecto, el trámite obligado para todos será en menoscabo de la sustancia de los recursos meritorios.**

Constituye un grave desacierto transformar en **apelación obligatoria** lo que hasta ahora es y ha sido **certiorari discrecional**. Máxime cuando actualmente el proceso de Relaciones de Familia ante el Tribunal de Primera Instancia está eficazmente controlado en salas especializadas, auxiliadas de examinadores expertos en pensiones alimentarias, guías estandarizadas, centros de mediación, etc. Este trámite, sólo acarreará déficit sustantivo y procesal ante el mismo universo del taller judicial; mayormente el Tribunal de Circuito.

**Finalmente, nos preocupa que el trastocar la distribución de recursos de revisión apelativa hecha por la Asamblea Legislativa en la Ley de la Judicatura, a corto plazo abra a discusión pública la suficiencia de Jueces del Tribunal de Circuito de Apelaciones para atender estas nuevas apelaciones y si ello justifica un aumento en su composición numérica y en el presupuesto funcional de los tribunales, sin excluir Primera Instancia.**

Con esa transmutación se abre innecesariamente una **Caja de Pandora**, en momentos en que comenzábamos a percibir una estabilidad en los recursos presentados en el Tribunal de Circuito de Apelaciones y un ejemplarizante índice de producción entre sus dedicados magistrados.

**Revocaríamos.**

ANTONIO S. NEGRON GARCÍA

Juez Asociado